**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

The Center for Self Leadership, Inc.     )
d/b/a IFS Institute     )
    )
      Plaintiff,     )
    )
        vs.     )      Civil Action No. _____
    )
PESI, Inc.,     )
Evergreen Certifications LLC,     )
Frank Anderson M.D., and     )
Frank G. Anderson M.D., Inc.,     )
    )
      Defendants.     )

## COMPLAINT

In the 1980s, Richard Schwartz, PhD ("Dr. Schwartz") developed a new psychotherapy model he coined INTERNAL FAMILY SYSTEMS, or IFS, (the "IFS Model"). Dr. Schwartz spent years training and certifying therapists and other practitioners in his IFS Model, and over time the IFS Model became well known to practitioners and patients alike.

In 2000, Dr. Schwartz founded The Center for Self Leadership, Inc. (which now does business as "IFS Institute") to provide training, education, and, eventually, certification in the clinical practice of the IFS brand of psychotherapy. For over 25 years, IFS Institute has been the world's only source of authorized training and certification in the IFS Model. As a result of nearly four decades of work by Dr. Schwartz and IFS Institute, "INTERNAL FAMILY SYSTEMS" and "IFS" are widely recognized by the relevant consuming public and therapists as brands associated uniquely with Plaintiff.

The Defendants in this case—one, a former fiduciary that IFS Institute hired to *protect* its brands, and the other, a marketing and hosting agent that IFS Institute hired as its partner—have

now teamed up. These two formerly trusted partners are working together to steal Plaintiff's brand, trade off Plaintiff's goodwill, and confuse therapists and clients with a knockoff training and certification program.

Defendants' unauthorized and misleading use of Plaintiff's marks is already causing actual confusion and constitutes trademark infringement and unfair competition under the Lanham Act. The Defendants have also engaged in false advertising to promote their programs. Further, Defendant Dr. Frank Anderson M.D.'s work with PESI, Inc. and Evergreen Certifications, LLC to infringe the very brands he was hired to protect constitutes a stunning betrayal of trust and breach of fiduciary duty. Plaintiff therefore seeks this Court's intervention.

As grounds for this Complaint, Plaintiff states as follows:

## INTRODUCTION

1. Plaintiff, The Center for Self Leadership, Inc., d/b/a IFS Institute ("Plaintiff"), brings this action against PESI, Inc. ("Defendant PESI" or "PESI"), Evergreen Certifications LLC ("Defendant Evergreen Certifications" or "Evergreen Certifications"), Frank Anderson, M.D. ("Defendant Anderson" or "Dr. Anderson"), and Frank G. Anderson M.D., Inc. ("Defendant Anderson, Inc." or "Anderson, Inc.") to redress the theft of its brand by two former trusted partners.

2. Plaintiff provides training and certification in the INTERNAL FAMILY SYSTEMS model of psychotherapy, a well-established and widely respected model of psychotherapy developed by Plaintiff's founder over 30 years ago.

3. Defendant Anderson was, until recently, a trainer in Plaintiff's training and certification programs, who so enmeshed and publicly affiliated himself with Plaintiff's business that he was ultimately contracted by (and trusted by) Plaintiff with the specific responsibility of protecting Plaintiff's brand integrity.

4.     PESI has been and continues to act as Plaintiff's marketing partner and hosting agent, responsible for hosting and promoting Plaintiff's online content under the IFS and INTERNAL FAMILY SYSTEMS trademarks.

5.     Evergreen Certifications is, on information and belief, a for-profit entity owned by PESI that is issuing or intends to issue infringing certifications under Plaintiff's IFS and INTERNAL FAMILY SYSTEMS brands.

6.     Defendant Anderson, Inc. is, on information and belief, a for-profit entity created by Defendant Anderson, to which Plaintiff was instructed to make payments owed to Defendant Anderson under his contract, and to which Defendant PESI reported making payments of $610,815 in 2023, according to PESI's public 2023 tax returns.

7.     In 2020, Plaintiff retained Defendant Anderson under a written agreement (the "Anderson Contract") as a director-level consultant and fiduciary responsible for, among other things, safeguarding the integrity of Plaintiff's brands. In this role, Plaintiff entrusted Defendant Anderson with privileged and highly confidential information relating to, among other things, the protection and enforcement of the IFS and INTERNAL FAMILY SYSTEMS brands. Plaintiff allowed him to work directly with Plaintiff's domestic and international trademark counsel to develop and implement global trademark and intellectual property strategies, including registering and enforcing Plaintiff's trademarks worldwide. Moreover, Plaintiff also appointed Dr. Anderson as its agent and fiduciary to represent its interests in dealings and negotiations with PESI.

8.     Defendant PESI, Inc. is a marketing and online hosting company that facilitates continuing education for professionals in various fields. PESI, Inc. is incorporated as a tax-exempt entity, but it is a behemoth in the psychotherapy industry generating large revenues and salaries for its leadership. In 2023, PESI reported revenues of over $86,012,699, with assets of

$147,000,000, paying its top five officers an average of $596,000, and its 13 highest-paid employees an average of $431,875. On information and belief, PESI owns many lucrative for-profit brands and businesses, such as the Psychotherapy Networker, Bridge City Books, Mindsight Institute, and Defendant Evergreen Certifications.

9.     Prior to 2019, Plaintiff marketed and distributed via PESI certain of Plaintiff's online educational programs under the IFS brand. In 2019, the parties formalized their relationship through a written agreement (the "PESI Contract").

10.     The PESI Contract placed responsibility for content creation with Plaintiff and technical and marketing support for that content with PESI: "New online content that needs to be developed for current or future online programming may be developed by [Plaintiff] or in partnership with PESI. PESI can assist with video and audio production needs." During contract negotiations PESI acknowledged it lacked expertise in Plaintiff's content; one of PESI's Vice Presidents wrote to Plaintiff "we are not the content experts." Under the PESI Contract, which remains in effect, PESI was designated as Plaintiff's marketing agent and agreed to "build sales pages, [prepare] email copy … promote online programs … [and] execute online program launches," all "acting on behalf of [Plaintiff]."

11.     Rather than complying with their obligations to Plaintiff, Defendants betrayed Plaintiff's trust by creating and promoting unauthorized, competing, and intentionally misleading imitation training and certification programs under the Plaintiff's INTERNAL FAMILY SYSTEMS and IFS brands.

12.     On September 11, 2025, PESI launched a new "*IFS trauma certification training*" program that seeks to compete directly with – and be confused with – Plaintiff's longstanding IFS training and certification program. This PESI "*IFS trauma certification training*" program is, on

information and belief, intended to support an unauthorized "*IFS trauma certification*" program that was announced by PESI's for-profit subsidiary, Evergreen Certifications, in June of 2025. Dr. Anderson is listed as an Advisor of the Evergreen Certification "*IFS trauma certification*" program.

13.     On information and belief, the Evergreen Certification's "*IFS trauma certification*" program is being used by PESI and Dr. Anderson to market and sell unauthorized IFS and INTERNAL FAMILY SYSTEMS-branded training programs. This conduct constitutes a breach of contract by PESI and a serious breach of fiduciary duty by Dr. Anderson. Indeed, Dr. Anderson has betrayed Plaintiff's trust by using, for his own benefit, privileged and confidential information he acquired during his tenure with Plaintiff.

14.     Defendants' conduct also constitutes trademark infringement. For decades, Plaintiff has been the only provider of training and certification in the IFS Model and holds trademark rights in the IFS and INTERNAL FAMILY SYSTEMS marks for use in connection with educational services and related materials, training, and certification. Defendants are not authorized to use these marks except in connection with Plaintiff's services. Their recent unauthorized use is likely, and clearly intended, to mislead consumers and practitioners into believing that Defendants' offerings are sponsored by, affiliated with, or endorsed by Plaintiff and therefore genuine.

15.     The harm caused by Defendants' actions is substantial and ongoing. Plaintiff has for 15-years provided its own certification in the IFS Model using its INTERNAL FAMILY SYSTEMS and IFS brands. Mental health professionals seek out this certification because they trust Plaintiff to provide the quality and depth of training necessary to properly use the IFS Model. Defendants' imitation training and certification program offers no such assurance. It is likely to mislead not only professionals, but also vulnerable and often previously traumatized patients, into

believing they are receiving care from practitioners trained and certified by Plaintiff—when they are not.

16.     Accordingly, Plaintiff respectfully requests that the Court enjoin Defendants from continuing their unlawful activities to prevent further harm to Plaintiff and the public. Plaintiff also seeks all damages and other relief that the Court or a jury deems just and proper.

## THE PARTIES

17.     The Center for Self Leadership d/b/a Internal Family Systems Institute and IFS Institute is an Illinois corporation with its principal place of business in Oak Park, Illinois.

18.     On information and belief, Defendant PESI, Inc. is a corporation with its principal place of business in Eau Claire, Wisconsin.

19.     On information and belief, Defendant Evergreen Certifications is a Wisconsin Limited Liability Company with its principal place of business in Eau Claire, Wisconsin.

20.     On information and belief, Defendant Evergreen Certifications is wholly owned by Defendant PESI.

21.     On information and belief, Defendant Frank Anderson, M.D. is an individual residing in the Commonwealth of Massachusetts.

22.     On information and belief, Defendant Frank G. Anderson, M.D., Inc. is a Massachusetts corporation owned and operated by Defendant Frank Anderson, M.D.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action includes claims for federal trademark infringement, unfair competition, and false advertising under the Lanham Act, 15 U.S.C. § 1125(a). On information and belief, this Court also has subject matter jurisdiction over

all claims pursuant to 28 U.S.C. § 1332 because there is complete diversity between the Plaintiff and all the Defendants.

24.     This Court has supplemental subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the Federal claims that they form part of the same case or controversy.

25.     The exercise of personal jurisdiction by the Court over Defendants is appropriate in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

26.     This Court has personal jurisdiction over Defendants because Defendants deliberately target residents of Illinois and this District. For example:

    a. Defendant Evergreen Certifications operates an internet website at <www.evergreencertifications.com>. Defendant PESI operates an internet website at <www.pesi.com>. Defendant Anderson operates an internet website at <www.frankandersonmd.com>. All three of these websites target residents of Illinois and this District by offering courses and/or certification programs to residents in this District.

    b. Defendant PESI claims on its website that in Illinois it is "a registered social work continuing education sponsor with the Department of Financial and Professional Regulation, Division of Professional Regulation." https://www.pesi.com/item/2day-certified-clinical-trauma-professional-training-137920?srsltid=AfmBOorPp-CIAgfFBHgbdqrnPMjCM7hHmWDIK4lER7r622mPu-TGrJSM#tabCredit.

c. As of June 5, 2025, Defendant Evergreen Certifications listed 58 professionals in the state of Illinois who hold certifications issued by Evergreen Certifications. https://www.evergreencertifications.com/professionals/.

d. Defendant Anderson has provided, and continues to provide, online training sessions and seminars, including the training sessions and certifications that are a subject of this lawsuit, to professionals nationwide. On information and belief, Dr. Anderson provides these training sessions both in his personal capacity and via his company, Frank G. Anderson M.D., Inc. On information and belief, Defendant Anderson and Anderson, Inc. provide these training sessions and seminars to residents of Illinois and this District.

e. On information and belief, Defendants have purposefully availed themselves of the benefits of doing business in Illinois by transacting business with customers in Illinois and this District.

27. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because the claims arose in this District and a substantial part of the events giving rise to the claims occurred in this District. Moreover, Defendants transact business in this District, have committed infringing acts in this District, and have engaged in activities that subject Defendants to the jurisdiction of this Court. Finally, because Defendants are subject to personal jurisdiction in this District, venue is appropriate in this District.

**PLAINTIFF AND ITS INTERNAL FAMILY SYSTEMS AND IFS TRADEMARKS**

28. INTERNAL FAMILY SYSTEMS, also known as IFS, is a term coined by Dr. Richard Schwartz to identify a model of "parts work" psychotherapy that he created (the "IFS Model"). Parts work is the generic term for a form of psychotherapy based on the theory that

8

individuals possess multiple internal parts or subpersonalities (or that it is helpful for individuals to view their own psyche in this way), and that engaging with these "parts" can help patients address trauma and other psychological conditions. INTERNAL FAMILY SYSTEMS identifies the specific brand of psychotherapy and the specific training and certification programs developed by Plaintiff.

29.     The INTERNAL FAMILY SYSTEMS brand of parts work psychotherapy was developed by Dr. Schwartz beginning in the early 1980s. Dr. Schwartz created the INTERNAL FAMILY SYSTEMS mark during the creation of the IFS Model and after years of speaking, teaching, and writing about the model, Dr. Schwartz conducted the first formal training using the IFS marks in 1991.

30.     To date, Dr. Schwartz has written six books and co-authored seven others on the IFS Model. He has written numerous articles on the IFS Model and regularly writes forewords and other introductions to books and publications on the IFS Model.

31.     Since its founding in 2000, Plaintiff has hosted the annual IFS Conference focused on the IFS Model, consistently using the IFS and INTERNAL FAMILY SYSTEMS marks to identify itself as the respective sources of the event. Prior to incorporating Plaintiff in 2000, Dr. Schwartz hosted this annual conference himself.

32.     In 2015, Dr. Schwartz and the IFS Model were featured in a chapter of Bessel van der Kolk's New York Times Best Seller, "<u>The Body Keeps the Score</u>", which spent more than 344 weeks on the New York Times Bestseller List for paperback nonfiction (27 of those 344 weeks at No. 1) and has since been published in 36 languages. See, https://www.nytimes.com/2021/07/08/books/review/the-body-keeps-score-bessel-van-der-kolk.html and https://www.nytimes.com/books/best-sellers/paperback-nonfiction/.

33.     Since its founding, Plaintiff has been the exclusive provider of training and certification in the IFS Model. It has officially trained more than 15,000 psychotherapists and other professionals and has delivered introductory and educational programs on the IFS Model's principles, concepts, and methods to tens of thousands more.

34.     Plaintiff strictly monitors and controls how those trained in the IFS Model may use the INTERNAL FAMILY SYSTEMS and IFS trademarks. For example, only professionals who have completed Plaintiff's "Level 1 IFS Training" and the associated certification process may refer to themselves as an "IFS Certified Therapist" or "IFS Certified Practitioner." These credentials signify that the individual has demonstrated proficiency in the IFS Model's core concepts and practices and can competently apply them in clinical settings. Plaintiff safeguards the integrity of the INTERNAL FAMILY SYSTEMS and IFS brands by ensuring that the training and certification process is rigorous and that certification is granted only to those who meet the highest standards. Achieving IFS Certification typically takes more than two years and includes approximately 300 hours of training, supervised practice, and consultation with an IFS Approved Clinical Consultant, a person credentialled by Plaintiff to provide the official, approved IFS consultations necessary to achieve IFS Certification.

35.     Plaintiff's restrictions on the use of its source-identifying designations—such as IFS Informed, IFS Trained, IFS Certified Therapist, IFS Certified Practitioner, IFS Approved Clinical Consultant, and IFS Trainer—are intended to ensure that therapy clients, referring professionals, and the public can accurately understand the level of training and certification a therapist has received in the IFS Model from Plaintiff.

36.     Plaintiff's training and certification programs—developed and refined over decades—have been highly successful and consistently in high demand. For years, the programs

have been fully subscribed, with waitlists of professionals seeking to begin the training and certification process. In the past year alone, Plaintiff has trained over 4,000 therapists in the IFS brand of psychotherapy.

37.     As a result of Plaintiff's continuous and exclusive use of the IFS and INTERNAL FAMILY SYSTEMS trademarks—particularly in connection with its genuine training and certification programs and credentials—professionals, patients, and others across the United States and internationally associate these marks exclusively with Plaintiff and have done so for decades.

## DEFENDANTS AND THEIR INFRINGING ACTIVITIES

### DR. FRANK ANDERSON

#### Background on Dr. Anderson's Fiduciary Affiliation with Plaintiff

38.     Defendant Anderson is a psychiatrist, who began his private practice in 1994.

39.     Defendant Anderson began his relationship with Plaintiff in 2008 by enrolling in Plaintiff's Level 1 IFS Training program.

40.     In early 2011, Defendant Anderson completed a multitopic Level 2 IFS Training that included a module on IFS for Trauma.

41.     In September 2012, Defendant Anderson received from Plaintiff the certification "IFS Certified Therapist" (IFS-C-T). This certification gave Defendant Anderson the right to use Plaintiff's IFS CERTIFIED THERAPIST mark so long as he continued to comply with Plaintiff's requirements for use of this mark. Defendant Anderson has used this certification mark since 2012 in his own personal branding and marketing to indicate he is connected to, affiliated with, and certified by Plaintiff.

42.     Dr Anderson also secured highly visible appointments at the Foundation for Self Leadership ("The Foundation"). The Foundation is a small non-profit established to support the

spread and impact of the IFS Model and foster research relating to the Model. From 2013 to 2015, he was the Chairman of the Foundation; in 2016 and 2017 he was the Co-Executive Director of Development and Research; and in 2018 and for portions of 2019 he was the Director of Research. These highly visible roles placed Dr. Anderson in a position of trust and perceived stewardship of Plaintiff's business of educating, training, and certifying therapists in the IFS Model.

43.     By 2014, Dr. Schwartz and Plaintiff had been the exclusive provider of training and certification for therapists in the IFS Model for more than twenty years. The high-quality training and certification provided by Plaintiff and Dr. Schwartz for decades had established the IFS Model as a powerful and effective modality for the treatment of trauma if in the hands of well-trained therapists. Dr. Schwartz and Plaintiff developed specialized methods for training and certifying therapists in the facilitation of the IFS Model specifically for the treatment of trauma. These methods were provided in the advanced Level 2 IFS Training programs that specifically dealt with the treatment of trauma.

44.     In August 2014, in response to Dr. Anderson's requests to get involved in Dr. Schwartz's and Plaintiff's training and certification programs, Dr. Schwartz allowed Dr. Anderson to become a "guest contributor" to a Level 2 IFS Training Program titled "Trauma & Neuroscience (Pilot)."

45.     The pilot program was successful enough for Dr. Schwartz to decide to continue the Trauma & Neuroscience Level 2 IFS Training in that format for the next several years. From 2015 to 2018, Dr. Schwartz and Plaintiff scheduled two Trauma & Neuroscience Level 2 IFS Training programs per year. In each one, Dr. Schwartz was the Lead Trainer for the training and Defendant Anderson was a guest contributor.

46.     In 2015, Dr. Bessel Van der Kolk's book, <u>The Body Keeps the Score</u> was published and became a *New York Times* Bestseller. The term "trauma" gained widespread attention in both the psychotherapy profession and the broader public discourse. The book's chapter on the IFS Model recognized it as an established and effective model and modality for trauma, when facilitated by well-trained and experienced therapists who have been through Plaintiff's training and certification program. By this time, several books and chapters on IFS and trauma had already been published.

47.     Plaintiff's business was growing. Overall interest in the IFS Model increased, as did the interest in Plaintiff's training and certification programs. Plaintiff's Trauma and Neuroscience Level 2 IFS Training program likewise did well, as one would expect for any training led by the founder of the IFS Model, Dr. Schwartz.  These Trauma & Neuroscience Level 2 IFS Trainings were consistent with the other Level 1, 2, and 3 IFS Trainings provided by Plaintiff in that they were all highly-experiential, with a small class size, in this case capped at 30 to 35 participants.

48.     In 2018, Dr. Schwartz decided he would no longer lead the Trauma and Neuroscience Level 2 programs after that year. Dr. Schwartz and Plaintiff allowed Defendant Anderson to continue the Trauma & Neuroscience Level 2 IFS Training program, filling the role Dr. Schwartz previously held.

**The Therapist Continuing Education Market Moves Online**

49.     Prior to and throughout 2019, Plaintiff anticipated and prepared for the continued, steady growth of its training and certification programs, as well as increased interest in introductory online educational offerings.

50. At the time, Pre-COVID-19, all of Plaintiff's Level 1, 2, and 3 IFS Trainings were conducted in-person, as was Plaintiff's annual IFS Conference. In addition to the in-person IFS Trainings and IFS Conference, Plaintiff also offered two online educational programs: the introductory "IFS Online Circle" and the supplemental, year-long "IFS Continuity" program.

51. Defendant PESI was then—and remains—a behemoth in the continuing education industry and the largest online clearinghouse for continuing education for therapists.

52. By the start of 2019, Dr. Schwartz had already produced several authorized introductory programs with PESI that were marketed under Plaintiff's brand.

53. Also with Plaintiff's authorization, by the start of 2019, Defendant Dr. Anderson had produced several small introductory online offerings under Plaintiff's brand that were marketed and sold by PESI.

54. In early 2019, Plaintiff and PESI met and negotiated the terms that became the PESI Contract, which the parties signed on March 11, 2019. The PESI Contract provided that PESI would market and host Plaintiff's proprietary branded content, and that the parties would work together to produce more authorized online content under Plaintiff's brand.

55. The term is defined in the last section of the contract and provided that <u>written notice of termination</u> was required and this requirement was expressly agreed to by both parties:

Termination:
- The term of this Agreement shall continue perpetually; provided, however, that (i) CSL may terminate the Agreement for any reason or no reason at all by providing at least 90 days' prior written notice to PESI, and (ii) PESI may terminate the Agreement for any reason or no reason at all by providing at least 90 days' prior written notice to CSL.
- Effect of Termination. Customers who have purchased the course(s) will retain the ability access and utilize their purchase. Upon termination, active sale, marketing and promotion of the course(s) will cease.

14

56. Throughout 2019 PESI hosted Plaintiff's existing online content—IFS Online Circle and IFS Continuity—and Plaintiff worked with PESI to produce new online introductory content under the IFS and INTERNAL FAMILY SYSTEMS marks.

57. At this time, Plaintiff needed someone to take the lead and help it work with PESI to develop introductory online content bearing its brand. Plaintiff also sought to continue to develop, protect, and reinforce the intellectual property and trademark protections for INTERNAL FAMILY SYSTEMS and IFS it had been developing and protecting for over 25 years. Meanwhile, Defendant Anderson continued to seek out ways to increase his public association and affiliation with Plaintiff, and he had ongoing discussions with Plaintiff about increasing his professional duties and capacities with Plaintiff.

58. Throughout 2019, with the PESI contract recently executed, Plaintiff and Defendant Anderson began negotiating a contract that would significantly expand and define Dr. Anderson's roles and responsibilities with Plaintiff.

59. After months of ongoing discussions, on January 27, 2020, Plaintiff and Dr. Anderson entered into the Anderson Contract.

60. Defendant Anderson negotiated for significant trust and responsibility from Plaintiff under this new agreement. Over the next two years, Dr. Anderson consistently met and worked with Plaintiff's officers and outside counsel on Plaintiff's trademark and intellectual property matters and legal strategy, including but not limited to developing drafts of trademark policies, pursuing trademark registrations on INTERNAL FAMILY SYSTEMS and IFS, and enforcing Plaintiff's rights against infringers both domestically and internationally. Dr. Anderson served as a director-level consultant on an IFS committee focused on preserving the integrity of Plaintiff's brand.

61.     Acting within these contracted capacities, Defendant Anderson scheduled and attended privileged meetings with Plaintiff's lead trademark counsel on Plaintiff's behalf. These meetings specifically focused on the legal strategy of protecting Plaintiff's IFS and INTERNAL FAMILY SYSTEMS trademarks. Defendant Anderson engaged as Plaintiff's agent and fiduciary in this regard, throughout all of 2020 and 2021.

62.     In April 2021, Dr. Anderson delivered a presentation to the IFS Trainers on behalf of the brand integrity committee. This presentation addressed some of the work the brand integrity committee had been doing over the past year and forecasted work that would occur over the coming years. Dr. Anderson served as the de facto director of the integrity committee. He was provided an email address by Plaintiff: frank@ifs-institute.com. He was often referred to as "director of integrity."

63.     Though the Anderson Contract provided that its term would end on December 31, 2020, the parties continued to work under the contract through 2021, into 2022 and beyond. Throughout 2021, Defendant Anderson continued his work on the integrity committee, and Plaintiff continued paying Defendant Anderson for these services.

64.     In addition to establishing that Dr. Anderson would be a paid director-level consultant on Plaintiff's brand integrity committee, the contract provided that Dr. Anderson and Plaintiff would schedule two Trauma and Neuroscience Level 2 IFS Training programs each year, and that Dr. Anderson could refer to himself as a Lead Trainer due to his staffing of that one, specific program, and that Dr. Anderson would represent Plaintiff's interests in all negotiations with PESI.

65.     In 2022, pursuant to the contract, Dr. Anderson and Plaintiff scheduled two Trauma and Neuroscience Level 2 IFS Trainings. Dr. Anderson also engaged with PESI and produced

programs bearing Plaintiff's brand. Plaintiff trusted that Dr. Anderson was acting in its best interests. Plaintiff would not find out until sometime later that Dr. Anderson was instead working with PESI to steal Plaintiff's brand, name himself as the originator in PESI programs, and develop a competing training and certification program with PESI.

66. In 2023, Dr. Anderson again scheduled two Trauma and Neuroscience Level 2 IFS Trainings with Plaintiff, even as he was recording and launching his "*Frank Anderson's INTERNAL FAMILY SYSTEMS Trauma Treatment Program*" with PESI, and as Anderson and PESI conspired to develop an unauthorized imitation Certification Program. Dr. Anderson would later cancel one of these two trainings with Plaintiff, stating that he was doing a book tour/signing for his newly released book, which bears plaintiff's brand in the subtitle: *Transcending Trauma – Healing Complex PTSD with Internal Family Systems Therapy.*

67. Dr. Anderson scheduled and completed a Trauma and Neuroscience Level 2 IFS Training with Plaintiff in 2024. Shortly after this program concluded, Dr. Anderson notified Dr. Schwartz of his intentions to launch a certification program with PESI branded under Plaintiff's brand. This program would provide a training, consultation, and a certification originally titled "Certified IFS Clinician (IFS-C)." In early 2025, prior to launch, PESI and Dr. Anderson changed the name to "Certified IFS Trauma Clinician (IFS-T-C)."

68. Plaintiff and Dr. Schwartz informed PESI and Dr. Anderson on multiple occasions, and in no uncertain terms, that they were not authorized to use Plaintiff's trademarks in connection with any training or certification program that was not affiliated with Plaintiff, and that doing so was unlawful. It was unclear whether Dr. Anderson and PESI would proceed or stand down.

69. In February 2025, Dr. Anderson attempted to schedule an IFS Level 2 trauma training session with Plaintiff. Plaintiff declined.

70.     On April 16, 2025, Dr. Anderson, through counsel, informed Plaintiff that he would no longer conduct training programs on behalf of Plaintiff. Defendant Anderson was therefore no longer a Lead Trainer at IFS Institute. However, Dr. Anderson and PESI continued to market Dr. Anderson and his programs, including the unauthorized Certified IFS Trauma Clinician (IFS-T-C) certification, by falsely stating that he "***is** a Lead Trainer at the IFS Institute under Richard Schwartz,*" continuing to intentionally mislead and confuse consumers as to PESI and Anderson's affiliation with Plaintiff. (Emphasis added.)

71.     Defendant Anderson has not conducted any training for Plaintiff since Fall 2024. He is no longer an authorized trainer in the IFS Model and is no longer affiliated with Plaintiff in any capacity. His involvement in the development and release of the fraudulent training and certification programs is in clear violation of Plaintiff's terms of use for Plaintiff's certification marks *IFS Certified* and *IFS Approved Clinical Consultant*, and as such, those credentials are revoked.

72.     As stated above, Dr. Anderson and PESI collaborated to launch a course that misleadingly names Dr. Anderson as the source, founder, creator, or owner of Plaintiff's brand, titled "Frank Anderson's INTERNAL FAMILY SYSTEMS Trauma Treatment Program." ("Anderson's IFS TTP").

73.     Defendant Anderson is neither the creator of the IFS Model, nor the founder of Plaintiff's branded Internal Family Systems training and certification programs. The title of this program is intentionally misleading.

74.     On information and belief, Dr. Anderson and PESI created the course knowing they would soon launch a similarly named certification program through Evergreen Certifications, with Anderson as the Director. Plaintiff is informed and believes they intended to compete directly with

Plaintiff's training and certification business model and to improperly exploit Plaintiff's reputation and goodwill through misleading and confusing marketing that suggests a false association between Plaintiff and this unauthorized training and certification program.

75.     By developing, branding, and launching *Frank Anderson's INTERNAL FAMILY SYSTEMS Trauma Treatment Program* and the Certified IFS Trauma Clinician (IFS-T-C) certification program, Defendant Dr Anderson has intentionally engaged in the misleading business conduct he was originally hired and entrusted by Plaintiff to help prevent. This is a serious breach of trust, fiduciary duty, and contractual obligations Dr. Anderson owed to Plaintiff.

76.     Defendants Anderson and PESI's unauthorized and misleading use of Plaintiff's trademarks creates a false impression of affiliation between Dr. Anderson, PESI, and Plaintiff and is likely to cause confusion among professionals, patients, and the general public. By doing so, Dr. Anderson and PESI have conspired to mislead and exploit thousands of therapists who are desperately seeking to receive authentic, affiliated, and authorized training and certification provided by or authorized by Plaintiff.

77.     Defendant Anderson negotiated his way into a position of trust and responsibility for Plaintiff. He breached and abused his fiduciary duties to Plaintiff, and he did so for his own gain and to Plaintiff's detriment, causing harm to Plaintiff's brand, and causing harm and confusion to the thousands of therapists who Dr. Anderson and PESI misled into paying their hard-earned dollars for these unauthorized programs.

78.     On August 18, 2025, Dr. Anderson sent Plaintiff a letter in which he admitted to being involved in the creation of the fake PESI and Evergreen certification program at issue in this Complaint. In that letter, Dr. Anderson states that he has decided not to continue his participation in the program. Of course, the damage has already been done. Today Dr. Anderson remains listed

as one of the advisors on the fake certification program, and his unauthorized *Frank Anderson's INTERNAL FAMILY SYSTEMS Trauma Treatment Program* continues to be offered by PESI.

### PESI

79.     PESI is a provider of professional continuing education. Prior to entering into the PESI Contract, Plaintiff and Dr. Schwartz collaborated with PESI to market and host Plaintiff's online seminars and educational content in the IFS brand of psychotherapy. Plaintiff and Dr. Schwartz created the content, while PESI was responsible for marketing it to psychotherapists and other professionals. The parties agreed that these online offerings would never use the word "training" to distinguish them from Platiniff's official Level 1, 2, and 3 IFS Trainings, never include any certification, and would not include Plaintiff's annual IFS Conference.

80.     Prior to 2019, Plaintiff and PESI usually operated without a written agreement. In March 2019, they executed the PESI Contract, which expanded the relationship between the parties.

81.     The PESI Contract provided, among other terms, that Plaintiff would supply two of its established IFS and INTERNAL FAMILY SYSTEMS branded online programs—Online Circle and Continuity—for PESI to market and host on its platform. The agreement further stated that "[n]ew online content that needs to be developed for current or future online programming may be developed by [Plaintiff] or in partnership with PESI." The contract also established a royalty structure to be paid to Plaintiff for all IFS-branded content distributed by PESI. Furthermore, PESI was responsible for many aspects of IFS Institute's distribution of online content, including marketing, sales, and revenue collection on its behalf, and also for managing Plaintiff's contact list of therapists and potential customers.

82.     In early 2022, three years into the contract, Plaintiff and PESI agreed to modify the contract to decouple the Online Circle and Continuity programs, so that IFSI would then market

and host those programs on its own, on marketing and hosting platforms fully under their control. Despite the specific decoupling and modifications, the PESI Contract was never terminated by either party.

83.     The PESI Contract remains in effect, and it continues to provide that Plaintiff— either independently or in collaboration with PESI—will develop and distribute IFS-branded content through PESI in exchange for agreed-upon royalties.

84.     The PESI Contract also requires that PESI's IFS-related content be produced in partnership with Plaintiff. Of course, the requirement that PESI produce IFS-related content "in partnership with IFSI" would prohibit PESI from producing unauthorized IFS-related content, including content that Plaintiff believes is misleading to therapists, exploitative, and harmful to Plaintiff and to the goodwill and integrity of Plaintiff's decades-old brand.

85.     To this day, PESI continues to market and host Plaintiff's IFS- and INTERNAL FAMILY SYSTEMS-branded online content, some of which was developed under the PESI contract, and PESI continues to pay royalties to Plaintiff for marketing and hosting this content.

86.     However, PESI has breached the PESI Contract by, among other things, creating and hosting IFS-branded content that was not developed by Plaintiff or in partnership with Plaintiff.

87.     For example, the course titled "Frank Anderson's INTERNAL FAMILY SYSTEMS Trauma Treatment Program – A Four Month Online Intensive" was neither developed with nor authorized by Plaintiff. PESI and Dr. Anderson were not authorized to use the IFS or INTERNAL FAMILY SYSTEMS trademarks in connection with that program, and Plaintiff has received no royalties from its sale.

88.     Moreover, PESI has collaborated to produce with Dr. Anderson the imitation training and certification programs bearing Plaintiff's brand, which Plaintiff has not approved of, and therefore PESI is in breach of contract and in breach of a duty of agency owed to Plaintiff.

89.     On September 11, 2025, PESI launched an email campaign from "**IFS Trauma Certification Team and PESI,**" and the email address pesi@pesieducation.com, with the subject line: "**NEW! Become a Certified IFS Trauma Clinician**." (Emphasis in original.) The program touts a value of $8,999.99 and is available for registration for $3,499.99.

90.     On information and belief, PESI launched this program to support the Evergreen IFS Trauma Certification program discussed herein.

91.     The copy for the marketing for this program made, among other things, the following claims: "Join the world's first-ever Internal Family Systems (IFS) Trauma Certification program that offers **the most complete training on IFS trauma treatment** available anywhere." (Emphasis in original.)  "Certified Internal Family Systems Trauma Clinician (IFSTC) Training with Dr. Daphne Fatter." "Register today, and you'll get access to comprehensive training, expert consultation, small-group practice, and hands-on support …"   "This certification course is uniquely designed to be: **Authoritative**: The only IFS Trauma Certification in existence, fully backed by IFS advisors and experts." (Emphasis in original.)

92.     On its face, the marketing copy put forward by PESI and Evergreen is an attempt to mislead and confuse customers and the general public into thinking that this training and certification program is affiliated with or approved by Plaintiff.

93.     The PESI marketing e-mail contained several links to a registration website for the "PESI Certified Internal Family Systems Trauma Clinician Training Program." On this webpage, PESI uses Plaintiff's own certification marks, combined with a host of confusing statements, to

mislead consumers into believing that this program was affiliated with and/or authorized by Plaintiff:

- Finally — you can <u>become a Certified IFS Trauma Clinician</u> and transform any type of trauma with the power of IFS Therapy

- Join Dr. Daphne Fatter, renowned IFS therapy author, trainer, **and clinical consultant[1]**

- **The world's first-ever Internal Family Systems (IFS) Trauma Certification** program is now open for registration!

- This program is unlike anything that's ever been developed, offering <u>the most complete training</u> on IFS trauma treatment available anywhere.

- Join certified IFS Therapist and clinical consultant Daphne Fatter, PhD, who will walk with you every step of the way and provide the skills and credentials you need to **treat trauma using the evidence-based IFS model**.

(Emphasis original.)

94. Taken as a whole, this is clear evidence that PESI and Evergreen Certifications are again intentionally marketing their fraudulent training and certification program to be confused with Plaintiff's branded certification and training programs, in an intentional effort to trade off the goodwill and integrity of Plaintiff's brand, and misled clinicians and clients with this fraudulent certification.

## EVERGREEN CERTIFICATIONS

95. On information and belief, Evergreen Certifications (a for-profit entity) is a wholly owned subsidiary of PESI (a tax-exempt entity). Evergreen Certifications describes itself as "an organization committed to certifying behavioral health, healthcare, allied health, and education

---

[1] Plaintiff has certified Dr. Fatter as an IFS Approved Clinical Consultant for several years. This is a credential provided by Plaintiff that authorizes her to provide official IFS Consultation as part of Plaintiff's IFS Certification process.  It is inherently confusing and misleading for PESI to use this credential to advertise that individuals can be certified by Dr. Fatter in its imitation IFS certification program.

professionals." [https://www.evergreencertifications.com/about-us/.].

96.     In June of 2025, Evergreen Certifications publicly announced the launch of a new certification program titled "Evergreen Certified IFS Trauma Clinician (IFS-T-C)." According to its website, this certification "will give you the tools to work with your client's multiple parts in a compassionate and deeply transformative way so they can release their emotional and physical trauma." Evergreen Certifications uses a graphic that is similar to Plaintiff's own certification badge to promote the program: [https://www.evergreencertifications.com/certification/evergreen-certified-ifs-trauma-clinician/].

97.     Evergreen Certifications' "IFS Trauma Clinician" certification program does not require participants to receive training from Plaintiff. Evergreen prominently displays Plaintiff's IFS trademark, and includes Plaintiff's business name—IFS Institute—and Plaintiff's certification marks, i.e., *IFS Certified Therapist, IFS Approved Clinical Consultant, IFS Trained Therapist,* and *IFS Trainer*, pervasively throughout its website. Despite this intentional misleading indicators of endorsement, sponsorship, and affiliation, the website states in small font: "This certification is not endorsed by, sponsored by, or affiliated with IFS Institute and does not qualify for IFS Institute credits or certification."

98.     On information and belief, PESI—acting through or in coordination with its subsidiary, Evergreen Certifications—created the infringing and misleading "IFS trauma certification program." Evergreen Certifications' website lists several courses produced by PESI and its affiliated entities as qualifying for certification renewal. On information and belief, PESI developed this program in part to divert mental health professionals away from Plaintiff's training and certification and to create confusion about the source and legitimacy of the training and certification.

99. In contrast to Plaintiff's IFS Certified Therapist (IFSCT) certification, which requires approximately 300 hours of primarily experiential, supervised practice, along with an attestation of competency by one of Plaintiff's credentialed IFS Approved Clinical Consultants, Evergreen's fake IFS Trauma Certification –conspicuously abbreviated as IFSTC—requires the recipient attest to "completing" 36 hours of an unspecified, pre-recorded didactic pertaining loosely to IFS and trauma, and then engage in 12 hours of large group consultation resulting in a signature of competency by an "Evergreen Approved IFS Clinician Consultant."

100. On information and belief, Dr. Anderson co-created the Evergreen Certifications certification program in collaboration with PESI and Evergreen Certifications. Evergreen Certifications' website identifies Dr. Anderson as an "Advisor" to the certification program. At the time it was launched, the website falsely claimed: "Dr. Anderson is the Vice Chair, Director, and trainer for the Center for Self Leadership with Richard Schwartz, PhD." This is intentionally or carelessly misleading marketing that confuses the public and falsely associates this fake certification with the goodwill and integrity of Plaintiff's business and brand.

101. This is not a case of innocent or unintentional infringement. Defendants are using Plaintiff's identical IFS and INTERNAL FAMILY SYSTEMS trademarks with full knowledge of Plaintiff's prior rights, and with copious marketing that is intentionally misleading and falsely associates Defendant's unauthorized services with Plaintiff's genuine ones.

102. Dr. Anderson, especially, has direct personal, privileged knowledge of Plaintiff's trademark rights, having previously been responsible for helping to build and protect those rights on Plaintiff's behalf, and being entrusted with confidential, privileged legal strategy, documents, and communications pertaining to Plaintiff's trademark protections.

103. Defendants have deliberately copied Plaintiff's IFS and INTERNAL FAMILY

SYSTEMS trademarks with the intent to cause marketplace confusion and to trade on the goodwill and brand integrity that Plaintiff has developed through decades of investment and recognition.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)
## (Against All Defendants)

104.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 103 as though fully set forth herein.

105.     Defendants' acts constitute unfair competition and trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

106.     Defendants' unauthorized use in interstate commerce of Plaintiff's IFS and INTERNAL FAMILY SYSTEMS trademarks—including Plaintiff's common law rights—is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Defendants and Plaintiff, and as to the origin, sponsorship, or approval of Defendants' goods and services, in violation of 15 U.S.C. § 1125(a)(1)(A).

107.     Defendants' conduct has occurred in interstate commerce and has caused, and unless enjoined, will continue to cause, serious and irreparable harm to Plaintiff's business, reputation, and goodwill, for which Plaintiff has no adequate remedy at law.

## COUNT II
## FEDERAL FALSE ADVERTISING
### 15 U.S.C. §1125(a)(1)(B)
### (Against all Defendants)

108.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 103 as though fully set forth herein.

109.    Evergreen Certifications' website advertised Dr. Anderson as an "Advisor" to its certification program and falsely stated: "Dr. Anderson is the Vice Chair, Director, trainer for the Center for Self Leadership with Richard Schwartz, PhD." This statement is false.

110.    In other places on Evergreen Certification's website, Dr. Anderson and others describe themselves as Lead Trainers at IFS Institute, IFS Approved Clinical Consultants, IFS Certified Therapists, and IFS Level 1, 2, or 3 Trained. All of these are certification marks owned and protected by Plaintiff and that bear Plaintiff's IFS mark. Displaying these credentials that are provided by and protected by Plaintiff, is not only in violation of Plaintiff's terms of use for these credentials, but it creates a clear, intentional false association with Plaintiff, and does not convey to the public that, in fact, Plaintiff does not authorize this program, opposes it, and believes it to be harmful, predatory business conduct, exploiting and misleading clinicians and clients alike.

111.    PESI's website similarly advertises courses featuring Dr. Anderson. At least one course biography includes the same false assertion found on Evergreen Certifications' website. Most, if not all, still state that Dr. Anderson "**is** a Lead Trainer at the IFS Institute under [Dr.] Richard Schwartz." (Emphasis added).

112.    Dr. Anderson, through PESI, promotes a program titled "Anderson's INTERNAL FAMILY SYSTEMS Trauma Treatment Program – A Four Month Online Intensive." The title falsely implies that Dr. Anderson created the IFS Model, when in fact the INTERNAL FAMILY SYSTEMS brand of parts work therapy was created by Dr. Schwartz.

113. These false statements have been used in commercial advertising and promotion to sell Defendants' products and services in interstate commerce, and those offerings compete directly with Plaintiff's products and services.

114. Plaintiff has suffered and will continue to suffer harm as a result of Defendants' false and misleading advertising.

## COUNT III
## ILLINOIS DECEPTIVE TRADE PRACTICES
### 815 Ill. Comp. Stat. 510/1 et seq.
### (Against All Defendants)

115. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 103 as though fully set forth herein.

116. Defendants' acts constitute deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*

117. Defendants' intentional, unauthorized use of Plaintiff's Marks has caused, and is likely to cause in the future, confusion or misunderstanding as to the sponsorship of, approval of, or affiliation or connection between Defendants' and Plaintiff's businesses. These acts constitute deceptive trade practices in the course of Defendants' business in violation of the Illinois Uniform Deceptive Trade Practice Act, 815 Ill. Comp. Stat. 510/1 *et seq.*

118. These Acts have caused Plaintiff to suffer damages and, unless restrained by this Court, will continue to cause serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## COUNT IV
## ILLINOIS COMMON LAW UNFAIR COMPETITION
### (Against All Defendants)

119.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 103 as though fully set forth herein.

120.     Defendants have misappropriated valuable property rights of Plaintiff, have passed off their goods and services as those of Plaintiff, are trading off the goodwill symbolized by Plaintiff's trademarks and are likely to cause confusion or mistake, or to deceive members of the consuming public and the trade. These acts have continued in bad faith despite Defendants' knowledge of Plaintiff's rights. These acts constitute unfair competition in violation of the common law of the State of Illinois.

121.     Defendants' acts have caused and will continue to cause Plaintiff to suffer damages.

## COUNT V
## BREACH OF FIDUCIARY DUTY
### (Against Defendant Anderson)

122.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 103 as though fully set forth herein.

123.     The 2020 Anderson Contract placed Dr. Anderson in a position of trust within Plaintiff's organization. It expressly tasked him with protecting the integrity of Plaintiff's brand and trademarks and required him to represent Plaintiff's interests in negotiations with PESI. As a result of these responsibilities, Dr. Anderson served as Plaintiff's agent and owed Plaintiff fiduciary duties, including duties of loyalty, confidentiality, and care.

124.    For example:

    i.   Dr. Anderson worked directly with Plaintiff's leadership and legal counsel to develop strategies for protecting Plaintiff's trademarks, branding, and other intellectual property, thereby—receiving privileged and confidential information he now exploits for his benefit and to Plaintiff's detriment;

    ii.  Dr. Anderson actively contributed to the development of Plaintiff's trademark use policy—directly participating in Plaintiff's ownership of the marks and Plaintiff's desire to keep them protected;

    iii. Dr. Anderson took action on Plaintiff's behalf to police its marks both domestically and internationally, including participating in privileged communications with legal counsel and third parties; and,

    iv.  Dr. Anderson agreed to represent Plaintiff in negotiations with PESI and acted under the guise of this agreement in developing programs in partnership with PESI and Plaintiff, before realizing it would be more lucrative to develop programs with PESI on his own.

125.    Dr. Anderson breached his fiduciary duties to Plaintiff by, among other things, misappropriating the very trademarks he was entrusted to protect. On information and belief, Dr. Anderson also used confidential information obtained while representing Plaintiff in negotiations with PESI to collaborate with PESI on a competing program. In doing so, Defendant Anderson exploited his position and the trust Plaintiff placed in him—including the brand integrity program he was hired to lead but failed to fully implement—for his own benefit and to Plaintiff's detriment.

126.     As a direct and proximate result of Defendant Anderson's breaches of fiduciary duty, Plaintiff has suffered damages, including loss of goodwill, competitive harm, and financial injury.

**COUNT VI**
**BREACH OF CONTRACT**
**(Against Defendant PESI )**

127.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 103 as though fully set forth herein.

128.     The PESI Contract was and remains a valid and enforceable contract for the purpose of maintaining, hosting, marketing and promoting Plaintiff's online programming on the PESI platform while sharing profits.

129.     The contract provides that "[n]new online content that needs to be developed for current or future online programming may be developed by [Plaintiff] or in partnership with PESI."

130.     PESI breached the PESI Contract by, among other things, developing and hosting new online content using the IFS and INTERNAL FAMILY SYSTEMS trademarks on its own, including "Frank Anderson's INTERNAL FAMILY SYSTEMS Trauma Treatment Program".

131.     As a direct and proximate result of PESI's development of new online content using the IFS and INTERNAL FAMILY SYSTEMS trademarks in violation of the 2019 PESI Contract, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff asks for judgment against Defendants as follows:

1.  That Defendants and their officers, agents, servants, employees, attorneys and all those in active concert with them, be preliminarily and permanently enjoined from all further unauthorized use of Plaintiff's IFS and INTERNAL FAMILY SYSTEMS trademarks, or any other marks that could reasonably be deemed confusingly similar to these marks.

2.  That the Court declare that Defendants' trademark infringement was willful.

3.  That the Court declare that Defendants committed acts of unfair competition and deceptive business and trade practices under common and statutory law.

4.  That the Court declare that Defendants engaged in false advertising under 15 U.S.C. § 1125(a)(1)(B).

5.  That the Court declare that Defendant Anderson breached his fiduciary duty to Plaintiff.

6.  That the Court declare that PESI breached its contract with Plaintiff.

7.  That Plaintiff be awarded damages and a disgorgement of Defendants' profits.

8.  That the Court declare that Defendants are jointly and severally liable for all damages assessed against any Defendant.

9.  That Plaintiff be awarded pre-judgment interest on all damages awarded by the Court.

10. That Plaintiff be awarded punitive damages, as applicable.

11. That Plaintiff be entitled to recover its reasonable attorneys' fees and costs of suit.

12. That Plaintiff be awarded any and all such other and further relief as this Court shall deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 18, 2025      By:    /Jeffrey Norberg/      

Jeffrey T. Norberg – IL Bar No. 6315012
Richard B. Biagi – IL Bar No. 6274572
Thomas M. Monagan – IL Bar No. 6278060
Amber Rye Brumfiel (*pro hac vice*
forthcoming)
NEAL & McDEVITT, LLC
2801 Lakeside Drive
Suite 201
Bannockburn, IL 60015
jnorberg@nealmcdevitt.com
rbiagi@nealmcdevitt.com
tmonagan@nealmcdevitt.com
abrumfiel@nealmcdevitt.com
docketing@nealmcdevitt.com
ph: (847) 441-9100

*Attorneys for Plaintiff*